UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PEDRO GARCIA RADILLO, | CASE NO. 2:26-cv-02357-JHC |
| Petitioner, | ORDER |
| v. | |
| BRUCE SCOTT et. al,, | |
| Respondents. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Pedro Garcia Radillo's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the Petition.  Dkt. # 1.

**II**

**BACKGROUND**

Petitioner is a native and citizen of Mexico who most recently entered the U.S. on October 22, 2024 with his wife and minor child.  Dkt. # 5 at 2.  The next day, Petitioner was served a Notice to Appear charging him as inadmissible under INA § 212(a)(7)(A)(i)(I) / 8

ORDER - 1

U.S.C. § 1182(a)(7)(A)(i)(I).  Dkt. # 5 at 2.  Pending his immigration court proceedings, Petitioner was released under the Alternatives to Detention (ATD) program.  *Id.*  The record does not include the conditions of release.  *See* Dkt. # 4 at 4; *see also* Dkt. # 6.

On May 15, 2026, Petitioner was arrested for a misdemeanor assault charge and was soon after issued a pre-trial domestic violence no-contact order.  Dkt. # 5 at 2.  Petitioner says he was the victim of the altercation, and the incident involved his adult son who Petitioner claims was inhibited by drugs at the time.  Dkt. # 8 at 7-8.  While in jail, Petitioner informed Immigration and Customs Enforcement (ICE) of the arrest, and ICE told Petitioner to report to his local field office.  Dkt. # 5 at 2; Dkt. # 1 at 4-5.

On May 21, 2026, when Petitioner voluntarily reported, ICE served him with an arrest warrant and arrested and detained him.  Dkt. # 5 at 3; Dkt. # 8 at 5.  Petitioner is detained at the Northwest ICE Processing Center.  Dkt. # 5 at 3.

### III

### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241 (a), (c).  "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner says that his re-detention without the opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]"  The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

ORDER - 2

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1]

Respondents do not engage with the *Mathews* factors, and say only that "[w]ithout conceding the issue, Federal Respondents do not possess evidence relating to the terms of

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; see *Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

ORDER - 3

Petitioner's initial release from ICE custody to demonstrate that the revocation of Petitioner's release complied with due process." Dkt. # 4 at 6. Although this appears to approach a concession, the Court still applies the *Mathews* factors.

A.    Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Petitioner has a liberty interest in being free from detention. *See* Dkt. # 1 at 7-8. Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same); *see also Kumar*, 2026 WL 668335, at *4 ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'").

The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). Petitioner was free from detention for almost 19 months. Dkt. # 5 at 2-3. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthen his interest in being free

ORDER - 4

from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

Petitioner has U.S. citizen children and his own construction business, which allows him to provide for his family. Dkt. # 1 at 3. In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner.

B.      Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, as Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard when he appeared for his check-in, the risk of an erroneous deprivation of Petitioner's liberty interest is high.

It seems as if the criminal charge might have been a reason for the re-detention, but Petitioner's arrest warrant does not state this as a reason and Respondents do not make this claim in their briefing.[2] *See* Dkt. # 6-4; *see generally* Dkt. # 4. Regardless, as Respondents say, there is no record of Petitioner's conditions of release. Dkt. # 4 at 6. It is common for a criminal conviction to violate conditions of release. *See e.g.*, *Fiston v. Bondi*, 2026 WL 926064, at *4 (W.D. Wash. Apr. 6, 2026). But courts typically draw a distinction where there has only been an arrest or pending charges, and courts have repeatedly found that the government violated due

---

[2] Respondents mistakenly refer to these pending charges as a conviction. *See* Dkt. # 4 at 7.

ORDER - 5

process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard. *Gill v. Noem, et al.*, 2026 WL 686134, at *1 (W.D. Wash. Mar. 11, 2026) (finding that the government violated non-citizen's due process rights when they re-detained him without notice or a pre-deprivation hearing despite a pending DUI charge); *Kelly v. Almodovar*, 2025 WL 2381591, at *3-4 (S.D.N.Y. Aug. 15, 2025) (same despite pending assault charges); *Navjot S. v. Warden of the Golden State Annex Det. Facility*, 2026 WL 370140, at *1, 3 (E.D. Cal. Feb. 10, 2026) (same despite an arrest for felony spousal abuse and misdemeanor child abuse).

Even more to the point, Respondents' argument fails because "the central issue here is the process by which re-detention occurred, not whether it was warranted." *Gill*, 2026 WL 686134, at *3. Petitioner says no procedures were used, the record shows the same, and Respondents do not dispute this claim or make any showing to the contrary. Dkt. # 1 at 13; *see generally* Dkt. # 4. The second factor favors Petitioner.

C.    Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206. The Court acknowledges that the government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

Prior to Petitioner's May 2026 arrest, he had no criminal history. *See generally* Dkt. ## 5, 6. And as already explained, a charge is different from a conviction, and to treat it as such could have devastating consequences. *See Gill*, 2026 WL 686134, at *1 (non-citizen was

ORDER - 6

charged with a DUI, detained in violation of due process, and during his detention the DUI charge was dismissed). As much as the charge should be considered, it does not necessarily indicate he would be a flight risk or danger to the community. In fact, the opposite seems true. Petitioner has a wife and four children for whom he financially provides through his own small business. Dkt. # 1 at 3. Petitioner was released from custody by local authorities and voluntarily reported to ICE. Dkt. # 1 at 5. Petitioner also has a pending asylum claim that he is pursuing with counsel. *See* Dkt. # 5 at 3; Dkt. # 1 at 3.

This *Mathews* factor also favors Petitioner. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue").

\* \* \*

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

As to the remedy, the Court finds that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at \*12 (W.D. Wash. Apr. 9, 2026*); Kirykovich v. Hernandez*, 2026 WL 890459, at \*4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional

ORDER - 7

violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original). As other courts in this district and Circuit have found, post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (*quoting Domingo v. Kaiser*, No. 25-cv-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4. Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

## IV

### CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

ORDER - 8

Dated this 28th day of July, 2026.

John H. Chun
United States District Judge

ORDER - 9